**FILED**

NOV 17 2016

Judge Charles P. Kocoras
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

TIMOTHY G. FISHER

No.   16 CR 717

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant TIMOTHY G. FISHER, and his attorney, DAVID E. KENNER and BRETT A. GREENFIELD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

## Charge in This Case

2.     The information in this case charges defendant with money laundering in violation of Title 18, United States Code, Section 1957(a).

3.     Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crime with which he has been charged.

## **Charge to Which Defendant Is Pleading Guilty**

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information, which charges defendant with money laundering in violation of Title 18, United States Code, Section 1957(a).

## **Factual Basis**

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning in approximately September 2011, and continuing through approximately September 2014, defendant was the President and Chief Operating Officer of First Farmers Financial LLC., a business located in Orlando, Florida, Fitzgerald, Georgia, and Los Angeles, California, which, among other things, purportedly acted as a non-traditional lender engaged in government-guaranteed lending under programs authorized by the U.S. Department of Agriculture.  In order to obtain USDA certification to act as a non-traditional lender of USDA guaranteed loans, defendant and Nikesh A. Patel created and submitted documents to the USDA that falsely reported the financial stability of First Farmers, their experience, and the identities of employees.

Beginning in approximately March 2013 and continuing through September 2014, Patel and defendant sought to obtain funds from Business A, a

2

Milwaukee-based investment advisor, and its clients by means of materially false and fraudulent pretenses, representations, promises and concealment of material facts.

In March 2012, defendant created financial statements which claimed that First Farmers had $37 million in assets, $17 million in cash on hand, and total profits of $51 million, when in truth and in fact, the company had no assets other than those obtained with stolen and converted money. Patel submitted these false financial documents to Business A.

In approximately March 2013, in order to induce Business A to acquire USDA guaranteed loans from First Farmers, defendant assisted in the creation of false financial statements and balance sheets for calendar years 2011, 2012, and the first two months of 2013. In these financial statements, defendant made false statements regarding First Farmers' assets, cash on hand, net profits, loans in existence, and capital.

In approximately April 2014, in order to induce Business A to continue their relationship with First Farmers, maintain the outstanding loans, and extend the existing line of credit First Farmers had with Business A, defendant and Patel created what purported to be "audited financial statements" for First Farmers for calendar year 2013, and submitted these statements to Business A. The purported "audited financial statements" were fictitious and falsely represented that First Farmers had substantial assets, cash on hand, and profits. Patel falsely represented to Business A that a CPA, "Geoff Kane," prepared and audited the financial

statements he sent to Business A. Defendant knew that Kane was a fictitious individual and he assisted Patel to create a fictitious biography for Kane which Patel sent to Business A.

Between approximately May 2013 and September 2014, Patel submitted loan packages to Business A for approximately 26 loans that had purportedly been issued by First Farmers to borrowers in Florida and Georgia with principal amounts ranging from $2,500,000 to $10,000,000. All these loans were completely fabricated, with no actual borrower, no USDA guarantee, and all bore forged borrower and USDA signatures.

Defendant's and Patel's conduct caused Business A to provide approximately $179 million of its client's funds to First Farmers for the acquisition of approximately 26 fictitious USDA guaranteed loans. As a result of defendant's and Patel's fraudulent conduct, Business A directed its Lisle-based affiliate that acted as a custodian for Business A's client funds, to wire transfer approximately $175 million of its clients' money from the affiliate's bank account in Illinois to First Farmer's account at BMO Harris Bank in Florida, and deposit the remaining $4 million into a margin account in First Farmers name at the affiliate. The $175 million in transferred funds included investments by financial institutions insured by the FDIC, a credit union, a labor organization, and employee benefit plans, and First Farmers used a portion of the funds it received from Business A to make principal and interest payments to Business A's clients, purportedly from and on behalf of the

fictitious borrowers. However, First Farmers used the bulk of the funds to pay off existing debts, acquire assets, invest in other businesses and pay personal expenditures.

Of the approximately $175 million Business A transferred to First Farmer's account at BMO Harris Bank, Patel wire transferred approximately $27,651,838 into four accounts that defendant and Patel jointly maintained: account # xxxx7493 in the name of "ASL Pictures LLC" at BMO-Harris Bank; account # xxxx3109 in the name of "First Farmers Financial LLC" at PNC Bank; account # xxxx3272 in the name of "First Farmers Bancorp LLC, Fund Control Account" at PNC Bank; and account # xxxx0263 in the name of "First Farmers Bancorp LLC, Operating Account" at PNC Bank. Of these funds, approximately $4,580,338 was transferred into defendant's personal bank account, #xxxxxx7896 at Citibank in California.

*April 29 Transfer*

On approximately Friday, April 18, 2014, defendant sent a text message to Patel asking whether he would be sending additional funds that week. Patel responded that he would be "loading a loan on Monday (April 21) and it takes 24 to 48 hours." On approximately April 21, 2014, First Farmers submitted a fictitious and fabricated USDA loan package in the name of "Baker Hospitality Group, LLC" to Business A. Baker Hospitality was a wholly fabricated entity which did not exist, and for which there was no USDA or pre-existing loan of any kind. Based upon the false representations regarding the USDA guarantee and underlying financial

transaction, on April 22, 2014, Business A directed its Lisle-based affiliate to wire transfer approximately $3,902,439.02 of client funds from the account it maintained on behalf of Business A's clients at First American Bank to First Farmer's account at BMO Harris Bank #xxxxxx0978, to fund the purchase of the USDA guaranteed portion of the Baker Hospitality loan. On April 29, 2014, Patel transferred approximately $500,000 from First Farmers' BMO account #xxxxxx0978 to First Farmers' Operating Account at BMO #xxxxxx6202. On that same day, Patel transferred approximately $500,000 from the BMO Operating Account #xxxxxx6202 to defendant's personal bank account #xxxxxx7896 at Citibank in California. On May 7, 2014, defendant transferred $450,000 of these funds from his personal account #xxxxxx7896 at Citibank in California to an account in the name of Business B at Citibank in Las Vegas, Nevada.

At the time defendant requested and received the transfer of $500,000 of investor money, and when he transferred $450,000 of these funds to Business B, defendant knew that the funds were criminally derived, namely that the funds originated from Business A and that the funds were derived from false and fraudulent statements he and Patel had made to Business A.

The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts

within defendant's personal knowledge regarding the charged crime and related conduct.

## **Maximum Statutory Penalties**

7.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 10 years' imprisonment.  This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## **Sentencing Guidelines Calculations**

8.     Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the

7

defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

b.    **Offense Level Calculations**.

i.    The base offense level is 7, pursuant to Guideline § 2S1.1(a)(1) and § 2B1.1(a)(1).

ii.    The offense level is increased by 26 levels pursuant to § 2B1.1(b)(1)(N), to reflect a loss of approximately $175,000,000, which is more than $150,000,000 but less than $250,000,000.

iii.    The offense level is increased by 4 levels pursuant to § 2B1.1(b)(2)(B), to reflect substantial harm to five or more victims.

8

iv.     The offense level is increased by 4 levels pursuant to § 2B1.1(b)(16)(B)(i), because the offense substantially jeopardized the safety and soundness of a financial institution. The base offense level is 40, pursuant to Guidelines §§ 2S1.1(a)(1) and 2B1.1(a)(1).

v.     The offense level is increased by 1 level pursuant to § 2S1.1(b)(1) because the count of conviction was § 18 U.S.C. 1957.

vi.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vii.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

9

c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.  **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 39, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range that exceeds the statutorily authorized maximum sentence of 120 months; therefore, pursuant to Guideline § 5G1.1, the guideline range is 120 months in addition to any supervised release, fine, and restitution the Court may impose.

e.  Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant agrees to pay restitution, totaling $27,651,838 to Business A and its investors, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

11

14. Defendant further agrees to relinquish any right, title, interest, or claim to funds currently maintained in JP Morgan Chase Bank account #xxxxx2782, that are currently restrained pursuant to Court Order in 14 CV 7581, litigation currently pending in the Northern District of Illinois. Defendant further agrees to execute whatever documents are necessary and undertake whatever acts are necessary so that, subject to Court approval, the restrained funds can be transferred to the Overall Receiver in that proceeding, for payment to Business A and its investors.

15. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

16. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

12

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 16 CR 717.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. **Right to be charged by indictment**. Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at

trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

14

      iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      c.      **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this,

defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

21.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

22.    Defendant understands that he has the right to be prosecuted for any criminal offense in the district or districts where the offense was committed. By signing this Agreement, defendant knowingly consents to prosecution of the charge

against him in the Northern District of Illinois and waives any objection to the venue of this prosecution.

**Presentence Investigation Report/Post-Sentence Supervision**

23.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or

probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials

18

over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

28.     Defendant understands that pursuant to Title 12, United States Code, Section 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation, except with the prior written consent of the FDIC and, during the ten years following his conviction, the additional approval of this Court. Defendant further understands that if he knowingly violates this prohibition, he may be punished by imprisonment for up to five years, and a fine of up to $1,000,000 for each day the prohibition is violated.

29.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## **Conclusion**

30.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

19

31.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

32.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

33.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

34.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: *Nov 17, 2016*

ZACHARY T. FARDON
United States Attorney

PATRICK J. KING, JR.
Assistant U.S. Attorney

TIMOTHY G. FISHER
Defendant

DAVID KENNER
BRETT A. GREENFIELD
Attorneys for Defendant

21