**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Case No.: 16-cr-00717-1

UNITED STATES OF AMERICA.*,*

    Plaintiff,

v.

TIMOTHY G. FISHER,

    Defendant.

_____/

    Defendant, Timothy Fisher, by and through his counsel of record, Brett A. Greenfield, hereby files the following Sentencing Memorandum in support of Mr. Fisher's sentencing position. The instant Memorandum is based upon the Plea Agreement filed with this Court, on the Presentence Investigation Report ("PSR"), the attached Memorandum of Points and Authorities, on all other papers, exhibits, and records filed in this case, and upon any other documentary evidence and/or oral argument that this Court may wish to consider at the time of sentencing.

**<u>Introduction</u>**

    Mr. Fisher was charged by way of Information No. 16CR717, a one count criminal matter was filed in the United States District Court for the Northern District of Illinois on October 31, 2016. The single count charged, wire fraud, in violation of 18 U.S.C. section 1957(a).

    Mr. Fisher appeared voluntarily for arraignment on November 17, 2016, before this Honorable Court and, pursuant to a written plea agreement, entered a plea of guilty to Count One of the information. The non-binding plea agreement states that each party is free to recommend whatever sentence they deem appropriate between 0-120 months.

**Background**

Timothy Fisher, 41 years old, was born December 6, 1976, in Burbank, California. He is married to Morena Tejada, together, they share a seven-year-old boy named Logan Fisher. Mr. Fisher is a very engaged husband and father. He absolutely loves his son, whom he describes as his best friend, takes him to school every day, coaches his teams, hugs and kisses him numerous times throughout each day, and shares a very close and loving relationship with his wife. As a family they are actively involved with their church, have made religion and their relationship with God a central part of their lives. They have been met with the struggles and adversity associated with this case and are determined to stay together as a family and maintain a positive and productive future together.

Mr. Fisher graduated from Woodbury University in Burbank, California, in 1999, with a degree in finance. Mr. Fisher has since left the financial industry and loan industry since the inception of this matter and has no intent or desire to go back.

He is currently in his fourth seasons as an assistant coach for the Pasadena High School basketball team as well as the head coach for the Pasadena Highschool junior varsity girls volleyball team. Both teams consist primarily of underprivileged students. Mr. Fisher prides himself with the opportunity to be a mentor and positive influence to these young men and women. He has taken the negative impact of this case, acknowledged the mistakes he has made, and uses this knowledge and this experience to help teach and guide the youth he connects with daily. In fact, so positive is his relationship with his players, that he now currently plays with a number of his graduated former players in a private basketball league.

Fisher has worked diligently to gain the trust of the parents, the faculty, and the student body at Pasadena Highschool. He is hard working, dedicated, and has committed himself to give of himself for the betterment of others. He is hopeful to continue the path of being an educator and to continue to devote his time to helping and mentoring youth

Beginning in January of this year, Mr. Fisher became employed as the operations manager for two Primary Care Physicians, Angelus Medical Clinic, 3444 Whittier Blvd, Los Angeles, CA 90023, and Lorena Medical Clinic, 3434 Whittier Blvd, Los Angeles, CA 90023. Mr. Fisher is responsible for staff relations, patient retention and marketing the clinic to the surrounding region. The clinics are based in East Los Angeles. Through his hard work and dedication, Mr, Fisher has successfully sought out and began to work with numerous programs to assist the community to provide affordable health care. Mr. Fisher has been intimately involved in the organization Young Life for the past four years mentoring youth at Pasadena High School (www.younglife.org).

Mr. Fisher recognizes and takes full responsibility for his acts and the harm caused. Mr. Fisher is remorseful. He has and will continue to lead a life of selflessness and assistance of those who need help. Mr. Fisher is heavily involved in his church and has devoted his life to family. Realizing he can never fully make up for the actions which have led him to this sentencing hearing, he has chosen to prove to this Honorable Court, the victims in this case, his family, and his community that he can and will be a positive influence and contributor to society. It is easy to make promises, Mr. Fisher has instead chosen to take positive steps and prove his worth through action and hard work.

**Statutory Framework**

In *United States v. Booker*, the United States Supreme Court determined that the Federal Sentencing Guidelines are no longer mandatory. *United States v. Booker*, 543 U.S. 220, 265, 125 S.Ct. 738 (2005). In so holding, the Court recognized the importance of "maintaining sufficient flexibility to permit individualized sentences when warranted." *Id*. at 264; *see also* 28 U.S.C. § 991(b)(1)(B). In addition, the Ninth Circuit has held that because no particular weight need be given to the Sentencing Guidelines, they are not presumptively reasonable. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). As such, although the Federal Sentencing Guidelines need be considered, they comprise only one factor to be taken into account when determining a reasonable and appropriate sentence for an individual defendant.

Section 3553(a) dictates that in determining an appropriate sentence the Court must first "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). The statute goes on to provide that such purposes are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2).

The statute further directs that sentencing courts must also consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the sentencing range established for the applicable offense category; (4) any pertinent policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

**Relevant Conduct**

The plea agreement sets forth seven specific acts by Mr. Fisher that he admitted to establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline section 1B1.3. A discussion of those acts and the representations made by Nikesh Patel's ("Patel") in conjunction with enticing and directing Mr. Fisher is discussed as follows.

Initially, it is important to note that Mr. Fisher admits and accepts responsibility for engaging in conduct which was part of Patel grand scheme to steal approximately $180 million dollars, and which he acknowledges was wrong. Moreover, he is aware that his actions led in no small part to investors losing a great deal of money. Mr. Fisher was a "yes" man, following directives, believing the representations and web of intricate lies of Patel, and for most of his relationship with Patel, created documentation in a vacuum. It is important to acknowledge that Fisher played a purposely naïve role in his dealings with Mr.

Patel during the inception of their business relationship. Fisher acknowledges the fact that he knew he was creating documentation, without verification of information, the purpose of which was to become a qualified lender under the USDA. Fisher acknowledges that his conduct was inexcusable. While it was unforeseeable to Fisher at the inception of his relationship with Patel that there would be losses suffered resulting from a massive fraud, he still willingly entered a business relationship under false pretense. For that, Fisher must accept, and does accept full responsibility for his actions.

Mr. Fisher was never privy to the actual mechanics of Mr. Patel's fraudulent loan scheme, the creation of falsified loans, the personal relationships with the USDA, Pennant Financial, Legence bank or Banes Capital, nor was he aware of the multitude of hotel properties purchased by Patel with the money derived from the fraudulent loans until it was too late.

Mr. Fisher was never a leader in Patel's elaborate scheme nor was he involved in the creation of, the signing of, nor the representations about the fake companies that Patel created to garner millions of dollars for the purchase of hotel properties, homes, cars, travel, etc. As previously stated, Mr. Fisher was unaware of a majority of Patel's conduct until it was too late. More problematic is the fact that nowhere in any of the discovery documents provided to Mr. Fisher is an explanation of who Patel had relationships with at the USDA, Pennant Financial, Legence Bank or Banes Capital for this grand scheme to take place. It would seem highly unlikely that Mr. Patel acted alone without the assistance of an inside person(s) at these institutions.

Consideration under section 3553 factors, also a basis for a downward departure, is the change to the Federal Sentencing Guidelines, in particular Federal Sentencing Guideline 1B1.3 relevant conduct. There is new clarity provided by Congress and the Commission as to what constitutes relevant conduct for the purpose of computing a sentence. The new 1B1.3 reads in pertinent part

"(1)(B)

In the case of jointly undertaken criminal activity … all acts and omissions of others that were:

(i) Within the scope of the jointly undertaken criminal activity,

(ii) In furtherance of that criminal activity, and

(iii) Reasonably foreseeable in correction with that activity …"

The commentary note 3 explains the significance and meaning of this change;

"3. "… The conduct of others that meets all three criteria… is relevant conduct under this provision. However, when the conduct of others does not meet any one of the criteria set forth [cited hereinabove] the conduct is not relevant conduct under this provision…

Accordingly, the accountability of the defendant for the acts of the other is limited by the scope of his or her agreement to jointly undertake the particular criminal activity."

A discussion of the relevant conduct of Mr. Fisher in relation to the representations of Patel, directives of Patel, and his actual conduct independent of and unforeseen by Fisher is discussed as follows:

**A. Initial Document Submission to USDA**

In or around August 2011, Patel represented to Fisher his intent to acquire a non-bank USDA lending license (similar to the SBA) non-bank license, Patel recruited Fisher to work for him and learn the industry. Fisher's responsibilities would be to manage the clients after they were approved for financing. The initial USDA lenders package was mostly complete at that point.

Patel was a very eccentric, convincing, and charming con-man. Patel could sell anything to anybody. He was engaging, believable, approachable, and made those around him want to do anything and everything he asked, Patel was a man of immense talent, who decided his talents were best served leading

those around him into a world of deceit and fraud. Patel met Fisher, saw that he was gullible, saw that he was desperate to make money and enjoy the fruits of a better life, and thereafter groomed his mark.

Patel convinced Fisher that he could make him a very wealthy man. He convinced him to leave his financially stable existence and convinced him to chase the gold ring. Patel found the perfect mark. Fisher took Patel's bait, hook, line, and sinker.

Initially Patel requested that Fisher provide to Patel his resume and a breakdown of all the loans that he worked on for the past five years. Fisher provided his resume to Patel, who then requested that Fisher be listed as an owner of his new business with him. Patel directed Fisher to change the title of his employment from a Business Development Officer, responsible for generating loans, to a Relationship Manager, responsible for portfolio management.

Upon direction from Patel, Fisher complied, made the changes, and created a document that outlined the different loans he had generated. During this period, Patel was working with a law firm and a former USDA representative that had already given Patel the verbal approval needed to get the USDA license. According to Patel, the paperwork that he needed Fisher to prepare was a formality.

In or around September 2011, Patel requested from Fisher a verification of deposit letter that would be the basis for an audit that would be submitted to the USDA for First Farmers Financial, LLC ("FFF"). Patel represented to Fisher, on several occasions, that his father-in-law had the capital on hand, but he refused to give a bank statement until the approval was in place. Patel also represented to Fisher that his father-in-law had agreed to fund the capital requirements as they were needed.

Patel requested that Fisher provide the verification of deposit letter to complete the USDA audit. Patel explained that he thought it was best for the letter to be from a financial institution that the auditor would not be able to meet in person. Fisher, a resident of California, was the perfect.

Fisher played naïve. Fisher failed to perform his due diligence with respect to Patel's representations. Fisher, admittedly, played fast and loose with the rules and created the verification letter, knowing the

7

intent of which was to become a licensed USDA loan generator. While Fisher knew the underlying documentation was sketchy at best, it was never his intention, nor was it foreseeable to him, that Patel's sole purpose was to create fraudulent loans and steal millions of dollars, creating a massive number of victims.

Fisher, on several occasions made half-hearted requests that Patel provide a bank statement from the Bank of India, which is where Patel represented on several occasions that his father-in-law held the required funds. Patel further represented to Fisher that the auditor would call and verify the letter and asked that Fisher provide the requested information on Wells Fargo letterhead. Finally, Patel requested that Fisher get an individual employed within Wells Fargo Bank to verify the letter. Fisher complied with his requests.

Fisher could not personally verify the letter on behalf of Wells Fargo Bank because he was now employed by Patel's company. Fisher arranged to have John Hagen, a Wells Fargo loan officer verify the letter. Patel explained to Fisher that he would be receiving a call from the auditor. Ultimately, Fisher was with Mr. Hagen when the auditor called, the letter was verified, and the audit was received.

After the audit was received, the final application was submitted. Approximately five months later the USDA approved the application. Mr. Fisher had no personal involvement or contact with the individuals involved in the USDA application. Patel controlled the narrative, isolated the parties, and kept secret his personal contacts within the USDA. While Fisher did prepare and provide the unauthenticated verification letter, he was at times unknowingly operating in a proverbial vacuum.

**B. March 2012 Creation of Interim Financial Statement Showing $37,000,000 In Assets, $17,000,000 In Cash.**

In or around the end of 2012 and beginning of 2013, Patel created a separate company, Alena Hospitality. Fisher was informed that Patel set up the company to manage the hotels owned by his father-in-law in addition to the hotels owned by Patel, his wife, and the father-in-law in partnership. Fisher was

told by Patel that his father-in-law had gifted two hotels to Patel and his wife and that they had purchased two additional hotels in Illinois and Florida.

Patel represented to Fisher that he obtained the funding for the hotels based on signature loans of $20,000,000 from the lender that worked with his father-in-law. In or around December 2012, Patel informed Fisher that his father-in-law demanded that the loans be immediately paid in full and he was thereafter going to gift the properties to Patel.

Patel began the process of acquiring a line of credit to pay off the loans for the hotels. Patel told Fisher that FFF was going to guaranty the loan and he needed interim financial statements to complete the approval. Patel provided to Fisher the financial information that he needed and directed Fisher to prepare the statements. Fisher entered the financial information provided by Patel into a spreadsheet and sent Patel the documents. Patel then directed Fisher to increase the cash position. Fisher complied with the directive.

### C. March 2013 Creation of False Financial Statements and Balance Sheets for 2011, 2012, and 2013.

The creation of these statements was for the same purpose as discussed hereinabove in sub-section (B). Mr. Fisher believes that the interim financial statement for 2011, matched the audited financial statement, and that the 2012 statement was elevated to show all cash flowing through the FFF as income. The assets and expenses were created based on information and representations provided to Fisher by Patel. Fisher made modifications to create the appearance of viability.

### D. April 2014 Audited Financial Statements and Fictitious Biography of Geoff Kane

Patel told Fisher that the representative from Pennant Management informed Patel that Pennant Management needed a new audit for 2013 or the credit line would be called, and the entirety of the line would need to be paid. Patel told Fisher that it was his intent to create an auditor. Patel told Fisher that Pennant Management would not accept an audit from the previous auditor.

9

Fisher put together the financial information for the audit upon the directive of Patel. Patel directed Fisher to prepare a biography letter for the fictitious auditor. Fisher noted all of information discussed with Patel, created the biography, and sent it to Patel.

Fisher had been made aware at this time that the line of credit to Pennant was based upon the 26 fraudulent loans, independently and without Fisher's knowledge, created by Patel. Fisher made the fatal mistake of believing he could help extend the time in which the line of credit could be paid back, in order that Patel have time to sell his hotel properties and repatriate the monies back to Pennant Management. It was during this crucial period that Fisher should have contacted law enforcement. Fisher fully acknowledges and takes responsibility for his lack of judgement.

Fisher did not maintain a personal contact of any kind with Pennant management and was never in the presence of, or involved in any contact of any kind that Patel maintained with individuals at Pennant Management, or representing Pennant Management in any capacity. Fisher mistakenly believed at that point he had no choice but to provide the information in order that the monies be paid back.

### E. 26 Fictitious USDA Loans

Fisher maintained no involvement in the creation or submission of any fictitious loans to Pennant Management. There is one submission to Pennant Management with Fisher's name listed on the report, however, the signature was forged by Patel or an individual unknown to Fisher working on his behalf. Fisher maintained no involvement in any capacity with Banes Capital, Pennant Management, or the USDA.

### F. $4,580,383 Wires to Fisher's Personal Bank Account.

These funds represented Fisher's personal income received from FFF and additional funds that were used to fund Business loans generated by Fisher, finish a joint venture for a diabetes product, and fund the creation of a movie sales company established to sell the films by FFF. A detailed spreadsheet

was provided to the Government pursuant to Mr. Fisher proffer, as well as provided in order to assist the Trustee in the corresponding civil matter.

### G. Baker Hospitality Loan and Subsequent 500k Wire and 450k Transfer to Nevada.

Patel was supposed to send the funds needed to finish a diabetes product. Fisher was receiving excessive pressure from the owner of the Nevada company because Fisher had previously informed him that the funds were on the way.

The project was already in place and over $1,000,000 had been advanced for the project to that point. Fisher was desperate to finish the project and avoid setting off any further alarms. He was aware of the fraud committed by Patel and was under the mistaken and ignorant belief that Patel could and would sell the hotel properties to pay off the outstanding balance to Pennant Management. Once Fisher received the $500,000, he kept $50,000 for personal expenses and transferred the remaining $450,000 to the Nevada company.

Fisher acknowledges and accepts full responsibility for this conduct.

**Patel Post Arrest Fraud and Striking Similarity to His Relationship With Fisher**

### A. Fraudulent USDA Loans

According to Federal Bureau of Investigation FD-302 reporting, Patel's post arrest conduct falls directly in line with the scheme he enticed Mr. Fisher to engage in under false pretense. Patel is a very charming, very believable con-man who convinces others to perform tasks under the guise of mis-information. Even after his arrest in the current matter, Patel has brazenly continued to engage in USDA loan fraud, while on bail, and in fact recruited an individual in the same mold as the gullible Mr. Fisher. Patel again used his charm to spin his web of deceit with yet another willing mark, Kevin Timirchand, in order to perform Patel's dirty work.

Just like he did to Mr. Fisher, Patel promised Timirchand the world. Patel induced Timirchand to come work for him, and begin a real estate development company Unison Realty Partners ("Unison"). Patel would act as an advisor, and would teach him the ropes of real estate development. Patel purported to have banking experience and the ability to raised money.

Patel began to request that Timirchand log into a Small Business Administration ("SBA") e-authenticate link and United States Department of Agriculture ("USDA") website. Patel instructed Timirchand to communicate via the email address of an associate of Patel with USDA representatives. All communications were specifically authored by Patel. Timirchand believed he was posing as an analyst of guaranteed lending with BB Americas to assist Patel with the loans.

Patel instructed Mr. Timirchand to sign USDA loan documentation in a vacuum, specifically USDA loan packages. Timirchand would sign loan documents created by Patel including, but not limited to, USDA lender's agreements, under the belief the loans were legitimate. Like Fisher, Timirchand was provided misinformation by Patel.

Patel would create the loan documentation, represent that he was performing the necessary due diligence, assemble the documentation for the loans, and never once showed proof that the properties listed in the USDA loans existed.

Like Fisher, Timirchand was a mark. A perfect pawn to play in Patel's secret game. Unlike Fisher, Patel would ask Timirchand to sign the fraudulent USDA loan documentation. In the case of Fisher, Patel created and submitted 26 fraudulent loans without, Fisher's knowledge or consent, and used the fraudulently received funds to purchase hotel properties. All outside the purview of Fisher.

Timirchand believed everything he was doing with the USDA loans was real. It took an FBI agent to show him that he had been defrauded by Patel since the inception of their relationship.

**Conclusion**

Mr. Fisher was found by Patel in a perfect state of gullibility, confusion, at a time where he was looking for an opportunity to be directed in the collection of funds. Mr. Fisher was, at that very moment in his life, the perfect candidate to have the line between closing a blind eye to illegal conduct, and the ability to recognize and reject that type of conduct. Mr. Patel therefore found Fisher at the very time that his own constituted defenses were at an all-time low.

Mr. Fisher reconciled the ability to participate in this money-making scheme while closing a blind eye to an evaluation to the legal propriety of what he elected to engage in. One of the essential components of finding Mr. Fisher in this vulnerable position resulted from Mr. Fisher's belief that although starting a business in an illegal fashion it would be fine as long as the execution of that very business was legal. From there it became the belief that as long as the investors defrauded by Patel, could and be made whole, he was not committing a crime. As time went on, Mr. Fisher had no choice but to face the reality that his conduct required him to close a blind eye to that in which he was becoming meshed.

Mr. Fisher, however, could not let go of the notion that the best thing he could do was to continue to follow Mr. Patel's directions, taking solace in the belief that he would be able to make everyone whole again, and thereby make the problem go away. I want to conclude by making sure I have done all that I could to make the Court understand that the more Mr. Fisher tried to assist in making all of his conduct good again would only serve to drag him deeper into the well of deceit, carefully created by Mr. Patel. I want to assure the Court that Mr. Fisher is not a person who this Court will likely ever have contact with again, that he is remorseful, and has since led a life of selflessness and assistance to his community and church, and that the penalty imposed would serve to hurt Mr. Fisher's wife and child the most.

Counsel submits his belief that it is not the mission of the Court in this matter and that a sentence of not more than 36 months would be appropriate.

                                                                       Respectfully submitted,

April 20, 2019                                     BRETT A. GREENFIELD

                                                                       s/ Brett A. Greenfield
                                                                       Brett A. Greenfield, CA. Bar No. 217343
                                                                       KENNER & GREENFIELD
                                                                       16633 Ventura Blvd., Suite 1212
                                                                       Encino, CA 91436
                                                                       Telephone (818) 995-1195
                                                                       Facsimile (818) 475-5369
                                                                       Brett@KennerGreenfield.com
                                                                       Attorney for Timothy Fisher

## **CERTIFICATE OF SERVICE**

     I CERTIFY THAT ON April 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                                                       s/ Brett A. Greenfield
                                                                       Brett A. Greenfield, CA. Bar No. 217343
                                                                       KENNER & GREENFIELD
                                                                       16633 Ventura Blvd., Suite 1212
                                                                       Encino, CA 91436
                                                                       Telephone (818) 995-1195
                                                                       Facsimile (818) 475-5369
                                                                       Brett@KennerGreenfield.com
                                                                       Attorney for Timothy Fisher